IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>TORI LYNN MATTES,<br><br>     Debtor(s). | CASE NO. BK21-80346-TLS<br><br>CHAPTER 7<br><br>ADV. NO. A21-8014-TLS |
| JAMES A. OVERCASH, Chapter 7 Trustee,<br><br>     Plaintiff(s),<br> vs.<br><br>BANK OF DIXON COUNTY,<br><br>     Defendants(s). | **ORDER** |

   This matter is before the court on the parties' cross-motions for summary judgment (Fil. Nos. 14 and 16). James A. Overcash represents himself as trustee, and Clay M. Rogers and Aaron F. Smeall represent the Bank of Dixon County. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

   For the reasons explained below, the trustee's motion is granted and the bank's motion is denied.

   The facts here are not in dispute. The debtor in this case purchased a vehicle less than one month before filing a Chapter 7 bankruptcy petition. The Bank of Dixon County financed the purchase in exchange for a security interest in the vehicle. However, the bank's lien was not noted on the vehicle's certificate of title until after the petition date. The Chapter 7 trustee filed this adversary proceeding to avoid the bank's lien and recover all payments made by the debtor based on that lien, and each side has now moved for summary judgment.

The parties agree on the following facts:

1. Tori Lynn Mattes filed for relief under Chapter 7 of the Bankruptcy Code on April 13, 2021. James A. Overcash is the duly appointed Chapter 7 Trustee in the case.

2. The Nebraska Department of Motor Vehicles lists the debtor with an ownership interest in a 2017 GMC Acadia, VIN 1GKKNULS4HZ255485.

3. The debtor became indebted to the Bank of Dixon County for the purchase of the vehicle.

4.   The debtor acquired the vehicle on or about March 24, 2021.

5.   As of the date the bankruptcy petition was filed, the Nebraska Department of Motor Vehicles did not show any liens recorded on the vehicle.

6.   After the bankruptcy petition was filed, the bank recorded a lien on the vehicle with the Nebraska Department of Motor Vehicles.

7.   The bank did not obtain relief from the automatic stay or permission from the bankruptcy court before recording the lien.

8.   The bank noted its lien on the vehicle's title on May 26, 2021.

9.   The debtor was insolvent during the period 90 days before the filing of the bankruptcy petition.

The evidence submitted to the court establishes that the parties in this case entered into a promissory note and security agreement dated March 24, 2021, and signed on March 25, 2021. The loan, in the amount of $27,690, was for a term of 60 months. The 2017 Acadia sport utility vehicle was pledged as collateral for the loan. The debtor used the loan to purchase that vehicle, and a certificate of title was issued to the debtor by the Dixon County Treasurer on April 20, 2021. The debtor filed her bankruptcy petition in the interim, on April 13, 2021. According to the bank's representative, the debtor delivered the title certificate to the bank on May 4, 2021. The bank states that Covid-19 restrictions prevented it from having its security interest noted on the title until May 26, 2021.[1]

The trustee's complaint is premised on 11 U.S.C. §§ 547 and 549, asserting that the bank's post-petition perfection of its lien was either a preferential transfer under § 547(b) or an unauthorized post-petition transfer under § 549(a). Both sections further the fundamental bankruptcy policy goal of equalizing distribution among creditors of the same class; § 547 deals with pre-petition transfers, while § 549 covers post-petition transfers.

In his motion for summary judgment, the trustee argues primarily that all legal elements of an unauthorized post-petition transfer have been established, there are no disputed factual issues, and the trustee is entitled to judgment as a matter of law. His alternative argument is that he is entitled to judgment because the transfer was a preference.

Because the existence of a transfer is at the heart of this dispute under both § 547 and § 549, it is useful to define the term at the beginning. As used in the Bankruptcy Code, the term "transfer" means –

(A) the creation of a lien;
(B) the retention of title as a security interest;

---

[1] The bank did not elaborate further and presented no evidence on this point.

(C) the foreclosure of a debtor's equity of redemption; or
(D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
    (i) property; or
    (ii) an interest in property.

11 U.S.C. § 101(54).

This definition is broad in scope, and includes ordinary transactions in which goods and services are voluntarily exchanged for consideration, as well as transactions in which title to property is changed in a way that could affect creditors. 2 *Collier on Bankruptcy* ¶ 101.54 (16th ed. 2022). The creation of a lien is a transfer within the meaning of the Bankruptcy Code, *In re Madcat Two, Inc.*, 127 B.R. 206, 211 (Bankr. E.D. Ark. 1991), as is any transaction that creates "a change in the rights of the transferor with respect to the property after the transaction." *Collier*, *supra* (quoting *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318, 338 (Bankr. N.D. Cal. 2009)).

A lien is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Here, the lien was created pre-petition when the parties signed the security agreement. *See* 11 U.S.C. § 101(50) and (51). The notation of the lien on the title certificate was a method of perfecting the existing lien, rather than creating one. However, the definition is expansive, and § 101(54)(D) encompasses every kind of disposition of or parting with an interest in property.

To recap, the relevant dates here are March 24, 2021, when the parties entered into the security agreement and the debtor purchased the vehicle; the petition date of April 13, 2021; and May 26, 2021, when the bank's lien was noted on the title certificate.

The trustee wants to set aside the transfer that occurred when notice of the bank's lien was placed on the Acadia's certificate of title as an unauthorized post-petition transaction avoidable pursuant to 11 U.S.C. § 549. Under § 549(a), "[a] transfer, including a lien, may be avoided . . . if: (1) the subject property was property of the bankruptcy estate; (2) the property was transferred; (3) the transfer was made post-petition; and (4) the transfer was not authorized by the bankruptcy code or the bankruptcy court." *Seaver v. New Buffalo Auto Sales, LLC (In re Hecker)*, 459 B.R. 6, 11 (B.A.P. 8th Cir. 2011).

The protections offered by § 549 complement those available under the automatic stay provisions of § 362:

> The filing of a bankruptcy case thus vests *exclusive* jurisdiction over the debtor's property in the bankruptcy court so that the bankruptcy court can control its administration. . . . [The] property [of the estate] cannot be removed from the bankruptcy court's exclusive jurisdiction except by appropriate proceedings in the bankruptcy court. Section 362(a) prohibits *involuntary* removal of assets unless permitted by lifting of the stay while other sections (such as § 363 and § 554) provide for the *voluntary* disposition of assets during administration of the case if

*authorized*. Section 549(a) provides a remedy for the avoidance of *voluntary* transfers that are *unauthorized*[.]

*Ford v. Loftin (In re Ford)*, 296 B.R. 537, 548 (Bankr. N.D. Ga. 2003).

The premise of the trustee's § 549(a) argument is that a post-petition transfer occurred when the bank perfected its interest in the debtor's vehicle by recording its lien on the title certificate several weeks after the bankruptcy case was filed, without obtaining relief from the stay or other court permission.

The bank asserts that no post-petition transfer was made because its security interest is a purchase money security interest ("PMSI") that attached, and became perfected under the U.C.C., when the debtor acquired rights in the vehicle (*i.e.*, on the date she purchased it).

The bank's argument focuses on the creation of a PMSI under Neb. Rev. Stat. U.C.C. § 9-103(b)(1) when the goods purchased are used as collateral for that security interest. Under Neb. Rev. Stat. U.C.C. § 9-309(1), a PMSI in consumer goods becomes perfected when it attaches, and it attaches when it becomes enforceable against the debtor with respect to the collateral. Neb. Rev. Stat. U.C.C. § 9-203(a). The bank further states that a security interest becomes enforceable against the debtor and third parties with respect to the collateral when value has been given, the debtor has rights in the collateral, and the debtor has authenticated a security agreement that provides a description of the collateral. Neb. Rev. Stat. U.C.C. § 9-203(b). Because the debtor had signed the security agreement pledging the Acadia as collateral in exchange for the loan that she promptly used to make the purchase, the bank argues, its security interest attached and became perfected against third parties such as the trustee when the debtor purchased and took possession of the vehicle.

The bank, recognizing that when collateral is covered by a certificate of title the state's motor vehicle laws come into play, then turns to the Nebraska statute governing liens on motor vehicles, Neb. Rev. Stat. § 60-164.[2] When the dense statutory verbiage is boiled down, it simply requires a lien to be noted on a vehicle's title certificate to be valid against other creditors:

---

[2] The portion of the statute relevant to this dispute states:

60-164. Department; implement electronic title and lien system for vehicles; liens on motor vehicles; when valid; notation on certificate; inventory, exception; priority; adjustment to rental price; how construed; notation of cancellation; failure to deliver certificate; damages; release
      . . .
      (2) Except as provided in section 60-165, the provisions of article 9, Uniform Commercial Code, shall never be construed to apply to or to permit or require the deposit, filing, or other record whatsoever of a security agreement, conveyance intended to operate as a mortgage, trust receipt, conditional sales contract, or similar instrument or any copy of the same covering a vehicle. Any mortgage, conveyance intended to operate as a security agreement as provided by article 9, Uniform Commercial Code, trust receipt, conditional sales contract, or

> Any . . . security agreement. . . covering a vehicle . . . in the case of a certificate of title, if a notation of the same has been made . . . shall be valid as against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants but otherwise shall not be valid against them[.]

Neb. Rev. Stat. § 60-164(2).

In 2008, the statute was amended and, among other changes not relevant here, the following sentence was added to the end of subsection 2: "A purchase-money security interest, as defined in section 9-103, Uniform Commercial Code, in a vehicle is perfected against the rights of judicial lien creditors and execution creditors on and after the date the purchase-money security interest attaches."

The bank interprets this sentence as a sea change in Nebraska's law of perfecting security interests in motor vehicles, asserting that the plain language of the amendment clearly provides that a PMSI in a vehicle is perfected on and after the date the PMSI attaches, and because the bank's PMSI attached and became perfected prior to the petition date, it cannot be avoided. This argument misapprehends the substance and effect of the amendment.

---

> other similar instrument covering a vehicle, if such instrument is accompanied by delivery of such manufacturer's or importer's certificate and followed by actual and continued possession of the same by the holder of such instrument or, in the case of a certificate of title, if a notation of the same has been made electronically as prescribed in subsection (1) of this section or by the county treasurer or department on the face of the certificate of title or on the electronic certificate of title record, shall be valid as against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants but otherwise shall not be valid against them, except that during any period in which a vehicle is inventory, as defined in section 9-102, Uniform Commercial Code, held for sale by a person or corporation that is required to be licensed as provided in the Motor Vehicle Industry Regulation Act and is in the business of selling such vehicles, the filing provisions of article 9, Uniform Commercial Code, as applied to inventory, shall apply to a security interest in such vehicle created by such person or corporation as debtor without the notation of lien on the certificate of title. A buyer of a vehicle at retail from a dealer required to be licensed as provided in the Motor Vehicle Industry Regulation Act shall take such vehicle free of any security interest. A purchase-money security interest, as defined in section 9-103, Uniform Commercial Code, in a vehicle is perfected against the rights of judicial lien creditors and execution creditors on and after the date the purchase-money security interest attaches.
>       . . .

Neb. Rev. Stat. § 60-164(2).

First, the sentence is about the timing of perfection. A PMSI becomes perfected when the lien attaches. As noted above, a security interest attaches when it becomes enforceable against the debtor with respect to the collateral, which requires a security agreement authenticated by the debtor that provides a description of the collateral. Neb. Rev. Stat. U.C.C. § 9-203(a) and (b). The preceding portion of section 60-164(2) addresses the validity of a security agreement and states that it is "valid as against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants" if the security interest is noted on the certificate of title, "but otherwise shall not be valid against them." Thus, if the lien is not noted on the title, the security agreement is not valid for purposes of this statute and the lien has not attached, regardless of whether it is a PMSI or not. The purpose of Nebraska's Motor Vehicle Certificate of Title Act is to regulate the transfer, sale, and encumbrance of vehicles, and it specifically excludes vehicles from the U.C.C.'s perfection and priority scheme. The bank's position ignores this.

Moreover, the bank's insistence that attachment is sufficient for perfection renders the statute internally inconsistent, as the language quoted above clearly states that a lien must be noted on the title certificate to be valid against a broad swath of creditors ("the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants of the debtor"), and if not noted on the title, shall not be valid against them. How can the bank's lien, if it were in fact perfected by attachment, nevertheless be invalid against "the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants" because it is not noted on the title?

Next, the statute refers to different groups of creditors. Noting a lien on the title renders it valid "against the creditors of the debtor, whether armed with process or not, and subsequent purchasers, secured parties, and other lienholders or claimants," while the new sentence applies only to the limited group of "judicial lien creditors and execution creditors." A bankruptcy trustee has the power of a judicial lien creditor, 11 U.S.C. § 544(a), but presumably most creditors affected by Neb. Rev. Stat. § 60-164(2) are not judicial lien creditors or execution creditors, so the new sentence likely does not apply in many cases. Further, the trustee's rights under §§ 549 and 547 are not limited by the trustee's rights as a judicial lien creditor under § 544.

While the 2008 provision does not appear to have been addressed in any judicial opinions, this court notes the legislature's placement of the language at the end of the section, immediately following provisions concerning security interests in vehicles in dealers' inventory. It is possible that the provision in question was put in place to protect retail purchasers and their lenders from judicial lien creditors and execution creditors of the dealer.

Accordingly, section 60-164(2) does not protect the bank under the circumstances of this case. Because § 549(a) permits the avoidance of liens and any other mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an interest in property that occurs post-petition, the bank's post-petition notation of its lien on the certificate of title is avoidable as an unauthorized post-petition transfer.

The trustee also makes the alternative argument that the transfer was a preference under § 547. "The Bankruptcy Code allows the trustee to avoid (set aside) pre-bankruptcy transfers of

the debtor's property that would result in preferential treatment of favored creditors." *Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 872–73 (8th Cir. 2000). Generally, "an avoidable preference is a transfer of the debtor's property, to or for the benefit of a creditor, on account of the debtor's antecedent debt, made less than ninety days before bankruptcy while the debtor is insolvent, that enables the creditor to receive more than it would in a Chapter 7 liquidation." *Cox v. Momar Inc. (In re Affiliated Foods S.W. Inc.)*, 750 F.3d 714, 717 (8th Cir. 2014); 11 U.S.C. § 547(b). The burden of proving the avoidability of a transfer under § 547(b) belongs to the trustee. § 547(g).

While state law governs perfection, federal law (the Bankruptcy Code) controls in the determination of when a transfer occurs. For purposes of the preference statute, a transfer of a security interest is deemed to occur when the transfer takes effect if it is perfected within 30 days, or when the transfer is perfected if the perfection is more than 30 days after the transfer. § 547(e)(2)(A) and (B).[3] If, as in this situation, a bankruptcy case intervenes before the transfer is perfected, then the transfer is deemed to have occurred immediately before the date the petition was filed. § 547(e)(2)(C).

In this case, the trustee asserts the transfer occurred when the bank's lien was noted on the title certificate two months after the vehicle was purchased and nearly six weeks after the debtor filed for bankruptcy. Under § 547(e)(2)(C), the transfer is deemed to have been made immediately before the petition date.[4] This brings the transfer squarely within the corners of the preference statute because the transfer occurred within 90 days prior to the petition date, on account of an antecedent debt, while the debtor was insolvent, and would enable the creditor to receive more than it otherwise would as a creditor holding an unsecured claim.

The bank, in contrast, relies on its attachment-equals-perfection argument as discussed above. The bank also argues that it can establish a defense and prevent avoidance because the security interest secures new value given to enable the debtor to acquire the property subject to the

---

[3] § 547(e)(2) states:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—
    (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);
    (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days; or
    (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—
        (i) the commencement of the case; or
        (ii) 30 days after such transfer takes effect between the transferor and the transferee.

[4] This section creates a fiction that essentially turns the post-petition action of attempting to perfect the lien into a pre-petition transfer for purposes of the preference analysis.

security interest. § 547(c)(3)(A). This defense only applies if the creditor perfects its interest on or before 30 days from the date the debtor receives possession of the property, § 547(c)(3)(B). The bank asserts that its interest became perfected when the debtor bought and took possession of the vehicle.

The bank's section 60-164(2) argument is unavailing here, for the reasons stated above. Moreover, the bank cannot rely on the "new value" defense of § 547(c)(3)(A) because the bank's interest was not perfected under Neb. Rev. Stat. § 60-164 by noting the lien on the car title on or before 30 days from the date the debtor received possession of the property.

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The movant bears the initial responsibility of informing the court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the non-movant must respond by submitting evidentiary materials that set out specific facts showing the existence of a genuine issue of material fact. *Id.*

There are no genuine issues of material fact here. Because the trustee has established the necessary legal elements of § 547(b) and § 549(a), the lien is avoided and the bank is in the position of an unsecured creditor. When a preferential or post-petition transfer is avoided, the trustee may recover from the transferee the value of the property transferred, in order to restore the bankruptcy estate to the position it would have been in had the transfer not occurred. 11 U.S.C. § 550(a). Accordingly, the bank should also remit to the trustee all payments made by the debtor on the lien, plus interest.

IT IS ORDERED: The Chapter 7 Trustee's motion for summary judgment (Fil. No. 14) is granted, and the lien is avoided. The Bank of Dixon County's motion for summary judgment (Fil. No. 16) is denied. Separate judgment will be entered.

Dated: June 8, 2022.

BY THE COURT:

/s/Thomas L. Saladino
Chief Judge

Notice given by the Court to:
* James Overcash
* Clay M. Rogers/Aaron F. Smeall
U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.